# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| MARGARET J. KERINS, individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiff | )<br>) |
| | ) **FLSA COLLECTIVE ACTION** |
| | ) **COMPLAINT UNDER** |
| | ) **29 USC § 216(b)** |
| | ) |
| vs. | ) CASE NO. 2:17-CV-249 |
| | ) |
| UNION ASSOCIATED PHYSICIAN CLINIC, LLC a/k/a AP&S CLINIC, LLC a/k/a UNION MEDICAL GROUP, | )<br>)<br>) |
| | ) |
| Defendant | ) |

## *PLAINTIFF'S COLLECTIVE ACTION COMPLAINT FOR DAMAGES*

### *I. INTRODUCTION*

Plaintiff Margaret J. Kerins ("Kerins") brings this collective action lawsuit against Defendant Union Associated Physician Clinic, LLC a/k/a AP&S Clinic, LLC a/k/a Union Medical Group (hereinafter collectively "UAP") to address class-wide wage and hour violations committed by UAP against its employees. Kerins will serve as the representative plaintiff in the FLSA collective action.

Specifically, UAP is and has been underpaying its hourly-paid employees' wages on a systematic, class-wide basis as a result of an illegal time card rounding policy and practice. All hourly-paid UAP employees were similarly subjected to UAP's unlawful compensation scheme that required its hourly paid employees to perform, on an aggregate basis, significant work without payment of wages. To explain generally, UAP is using a non-neutral recordkeeping

1

system which rounds work time entries only in UAP's favor and to its employees' detriment. UAP's illegal time card rounding practices (non-neutral time card rounding) violate the FLSA and result in underpayment of overtime compensation.

Kerins' collective action claims based upon UAP's illegal time card rounding practices are perfect for collective action treatment and will be easy to prove. All of UAP's wage violations will be shown from a comparison of the face of UAP's pay stubs to employees and UAP's own time records for those same employees.

Kerins will pursue her own claim for all unpaid wages pursuant to the Indiana Wage Claims Statute. I.C. 22-2-9.

## II. FACTUAL ALLEGATIONS

1. Kerins is a resident of the State of Indiana, and is domiciled in Sullivan, Sullivan County, Indiana. Kerins became an employee of UAP in approximately February 2013. She worked as a receptionist for UAP's Convenient Care Clinic in Terre Haute, Vigo County, Indiana. She continued her employment with UAP until she was involuntarily terminated on or about April 20, 2017. At all times during her employment with UAP, Kerins was paid wages on an hourly basis and treated as a non-exempt employee.

2. For Kerins and all of its hourly-paid employees, UAP used and uses an electronic (believed to be a Kronos system) time keeping system. Employee's would clock in by punching their employee identification number into a key pad (or on a computer if problems existed with the key pad). Using this time clock, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ends his/her work each shift. If UAP paid its non-exempt, hourly-paid employees' wages and overtime based upon these time

2

clock entries, UAP would have been in compliance with the FLSA and with Indiana wage statutes.

3. UAP does not pay its employees' wages and compensation based upon actual entries on UAP's own time records.

4. Importantly, UAP does not record its non-exempt, hourly-paid employees' work time in any other way. The only time records UAP has to base its payment of wages are the time records generated by the electronic time clock.

5. UAP has created a policy and practice whereby it significantly adjusts downward and deducts time from its non-exempt, hourly-paid employees' time records and pays its employees for less than their full time worked.

6. Based upon its long-standing policy and practice of manipulating and downwardly adjusting employee time records, UAP has been systematically underpaying its employees significant sums of wages on a daily basis. The aggregate sum of unpaid wages for all employees based upon UAP's non-neutral (and self-serving) rounding policy is very substantial on a daily, weekly, and an annual basis.

7. UAP's time rounding system or program is designed to always benefit UAP, both at the beginning of each employee's shift and at the end of each employee's shift. UAP pays its hourly employees for time worked in increments of one-tenth of one hour (0.10 hours). When an employee clocks in at the beginning of a work shift, the employee's time punch is rounded **up** to the nearest one-tenth of an hour. For example, if an employee clocks in and begins work at 6:55 a.m., the employee's time record is rounded **up** to treat the employee as though she clocked in at 7:00 a.m. However, when an employee clocks out at the end of her work shift, that employee's

time is rounded **down** to the nearest one-tenth of an hour. As an example, if an employee clocks out when she finishes work at 5:05 p.m., that employee's time record is rounded **down** to treat the employee as though she clocked out at 5:00 p.m.

8. Systematically, UAP rounds time off both ends of its employees' work shifts to benefit UAP and to harm employees. UAP underpays wages to its employees by its use of this rounding system. If employees were paid wages on a continuous work day basis - paid from actual time punch in to actual time punch out - employees would be paid more wages. Moreover, even if UAP utilized a neutral time rounding system - where it rounds up to the nearest one-tenth of an hour as often as it rounds time entries down to the nearest one-tenth of an hour - employees would be paid more wages.

9. As described above, all of UAP's time rounding practices were performed to UAP's advantage and to the detriment and harm of UAP's employees. UAP's time card rounding practices are not neutral. Kerins was actually harmed and underpaid wages and overtime compensation based upon UAP's implementation of its unlawful wage practices as described herein.

10. To provide a specific example of UAP's illegal rounding of Kerins' time records during calendar year 2017, Kerins can highlight the work week of January 15, 2017 through January 21, 2017. Kerins worked on January 16, 2017 through January 20, 2017 (Monday through Friday). She was paid at her hourly rate of $16.88. For that week, UAP paid Kerins for 41.61 hours of her work, which included payment at an overtime rate for 1.61 overtime hours of work. UAP's time clock records for Kerins indicate that Kerins actually recorded and worked 42.04 hours that week, which includes 2.04 hours of overtime work. UAP underpaid Kerins for

4

0.43 hours (26 minutes) of overtime work during this work week. In fact, applying its rounding scheme to Kerins' time punches, UAP rounded or shaved a little bit of recorded work time from Kerins each day she worked. On Monday, January 16, 2017, Kerins recorded 8 hours and 31 minutes of work (8.52 hours), but UAP records show she was paid for only 8.45 of those hours. On Tuesday, January 17, 2017, Kerins recorded 8 hours and 25 minutes of work (8.42 hours), but UAP records show she was paid for only 8.33 of those hours. On Wednesday, January 18, 2017, Kerins recorded 8 hours and 27 minutes of work (8.45 hours), but UAP records show she was paid for only 8.38 of those hours. On Thursday, January 19, 2017, Kerins recorded 8 hours and 16 minutes of work (8.27 hours), but UAP records show she was paid for only 8.13 of those hours. Finally, on Friday January 20, 2017, Kerins recorded 8 hours and 23 minutes of work (8.38 hours), but UAP records show she was paid for only 8.32 of those hours.

11. To provide a second specific example of UAP's illegal rounding of Kerins' time records during calendar year 2016, Kerins can highlight the work week of July 31, 2016 through August 6, 2016. Kerins worked on August 1, 2016 through August 5, 2016 (Monday through Friday). She was paid at her hourly rate of $16.63. For that week, UAP paid Kerins for 40.22 hours of her work, which included payment at an overtime rate of pay for 0.22 overtime hours of work. UAP's time clock records for Kerins indicate that Kerins actually recorded and worked 40.75 hours that week, which includes 0.75 hours of overtime work. UAP underpaid Kerins for 0.53 hours (32 minutes) of overtime work during this work week. In fact, applying its rounding scheme to Kerins' time punches, UAP rounded or shaved a little bit of recorded work time from Kerins each day she worked. On Monday, August 1, 2016, Kerins recorded 8 hours of work (8.00 hours), but UAP records show she was paid for only 7.90 of those hours. On Tuesday,

5

August 2, 2016, Kerins recorded 8 hours and 14 minutes of work (8.23 hours), but UAP records show she was paid for only 8.10 of those hours. On Wednesday, August 3, 2016, Kerins recorded 8 hours and 4 minutes of work (8.07 hours), but UAP records show she was paid for only 8.02 of those hours. On Thursday, August 4, 2016, Kerins recorded 8 hours and 14 minutes of work (8.23 hours), but UAP records show she was paid for only 8.10 of those hours. Finally, on Friday August 5, 2016, Kerins recorded 8 hours and 13 minutes of work (8.22 hours), but UAP records show she was paid for only 8.10 of those hours.

12. Based upon information and belief, particularly when including employee turnover, Kerins estimates that UAP applied its unlawful time card rounding, as described herein, to the time records of 1,000 or more hourly paid UAP employees. Kerins estimates that UAP has rounded its employees' time records in its own favor to such a degree that UAP failed to pay its employees for tens of thousands of hours of work that were reported to UAP in its time records during the period of time relevant to this lawsuit. Depending upon the number of individuals who choose to opt in to the FLSA collective action, Kerins estimates that UAP could owe a class-wide, cumulative total of up to hundreds of thousands of dollars in unpaid overtime and damages under the FLSA based upon UAP's systematic underpayment of wages and overtime caused by this illegal time rounding. Moreover, Kerins and many of her similarly situated UAP coworkers routinely worked in excess of forty (40) hours during one or more calendar week in which they also were subjected to illegal time card rounding and not paid all of their overtime compensation.

13. UAP has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through UAP's illegal time card rounding

practices. UAP has intentionally, knowingly, with reckless disregard and systematically violated Kerins' and all similarly situated employees' rights to be paid earned wages and to be paid earned overtime compensation. UAP deliberately and intentionally implemented a time card rounding system in order to pay less in wages to its employees than it owed and less than was reported and earned by the employees.

14. Particularly because UAP had (and still has) records of its employees' full time worked and simply chose to adjust and reduce the amount of time it paid its employees for work performed, it is clear that UAP knowingly and willingly failed and refused to pay Kerins and her fellow hourly-paid coworkers for all time worked.

15. Kerins and all of her similarly situated coworkers have been harmed by UAP's uniform policies and practices of reducing and adjusting time records downward and other types of non-neutral time card rounding practices, all of which profited UAP and worked to the detriment and harm of UAP's employees. These illegal time record rounding decisions are clearly the product of a conscious policy decision made by UAP to manipulate its time records and to pay its employees for less than all time worked.

### III. COLLECTIVE ACTION ALLEGATIONS

16. Kerins incorporates herein by reference paragraphs 1 - 15 above.

17. This Complaint is brought as a collective action under the FLSA on behalf of Kerins and other current and former UAP hourly-paid employees who were similarly denied payment of wages and overtime compensation under UAP's compensation scheme that involved the manipulation of time records and the failure to pay wages for work at the beginning and the end of UAP employees' shifts.

18. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Kerins and all UAP current and former hourly-paid employees who were damaged by UAP's compensation system which required and resulted in uncompensated overtime work by UAP's employees. By virtue of the "collective action," Kerins represents the identical and/or similar interests of former and current hourly-paid coworkers denied wages and overtime compensation under the same circumstance. Kerins anticipates that other UAP employees and former employees will opt in to the action.

19. The number of UAP's current and former employees who will be members of this collective action is so great that joinder of all members is impractical. Instead, Kerins will pursue discovery to obtain the names of the other current and former UAP employees, to provide notice of the collective action, and to offer the opt-in opportunity.

20. Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

21. Kerins' claims are typical of the claims of the whole collective group of current and former hourly-paid employees harmed by UAP's illegal time rounding and wage practices.

22. Kerins will act to fairly and adequately protect the interests of the entire collective group of current and former UAP employees.

23. A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against UAP. For example, to prove UAP's illegal wage practices, Kerins and other members of this collective group would seek in discovery records about all similarly situated current and former UAP employees who were similarly denied earned wages and overtime compensation under UAP's illegal and non-neutral time record rounding

practices, all of which harmed hourly-paid employees. Individual lawsuits by the members of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

24. A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

25. A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### IV. JURISDICTION AND VENUE

26. This Court has jurisdiction over Kerins' FLSA claims under 28 USC § 1331 as those FLSA claims raise a question of federal law. See 29 USC § 201 et seq. The Court has supplemental jurisdiction over Kerins' Indiana statutory wage law claim, which has a common basis in fact with her FLSA claims.

27. This Court is the appropriate venue for this cause of action as Kerins worked for UAP in Terre Haute, Vigo County, Indiana and most of the illegal activity took place in the Southern District of Indiana. 28 USC § 1391.

## V. STATEMENT OF CLAIMS

### A. *Fair Labor Standards Act Claims*

28. Kerins incorporates herein by reference paragraphs 1 through 27 above.

29. UAP is an "enterprise" as that term is defined by the FLSA, and UAP is covered by the overtime and minimum wage provisions of the FLSA. UAP is an "employer," as that term is defined by the FLSA. Finally, UAP is a "person" as that term is defined by the FLSA.

30. UAP has violated Kerins' rights and the rights of all members of the Plaintiff Class to be properly paid overtime wages in a manner required by the FLSA. UAP has committed overtime violations by failing to pay Kerins and her similarly situated coworkers for all hours of work, particularly as UAP has underpaid wages based upon its illegal and non-neutral time record rounding scheme.

31. UAP has repeatedly violated the FLSA's overtime provisions by not paying Kerins and members of the Plaintiff Class at the required overtime compensation rate for all hours worked over 40 in a work week.

32. Kerins and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for UAP's violations of their rights under the Fair Labor Standards Act.

### B. *Kerins' Individual Claim Under the Indiana Wage Claims Statute*

33. Kerins incorporates herein by reference paragraphs 1 through 32 above.

34. Kerins was involuntarily terminated from employment by UAP. As such, Kerins' wage claims to recover illegally deducted amounts and unpaid and underpaid wages arise under

the Indiana Wage Claims Statute, I.C. 22-2-9.  Kerins obtained a letter from the Indiana Attorney General's Office dated May 3, 2017 which permits her attorney to file this wage claim on Kerins' behalf as the Indiana Attorney General's "designee."  To the extent she cannot do so in a class action context, Kerins is still pursuing any and all claims for damages under the Indiana Wage Claims Statute, I.C. 22-2-9, to recover all unpaid and underpaid wages stemming from UAP's illegal rounding of time records.

35. By way of this Claim, Kerins is seeking all available damages, including all unpaid wages, all underpaid wages, any and all available liquidated damages, all attorney's fees, costs and expenses, plus any other damage to which Kerins may be entitled pursuant to law.  Pursuant to I.C. 22-2-9-4, which incorporates I.C. 22-2-5-2, Kerins is seeking payment of unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.  Kerins further expressly asserts and alleges that UAP acted in bad faith, and certainly was not acting or seeking to comply with the Indiana Wage Payment Statute or Indiana Wage Claims Statute in "good faith," when it intentionally created a time card rounding scheme that systematically skimmed time and wages from its employees that resulted in underpaid wages to Kerins and to all employees on a class-wide basis.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Kerins respectfully requests that the Court enter judgment against UAP, and issue all available relief to her and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid overtime wages, all

liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All unpaid and underpaid wages;

3. All statutory damages owed to Kerins under the Indiana Wage Claims Statute, including, but not limited to, all treble damages, costs, and statutorily authorized damages;

4. All reasonable attorney's fees and expenses;

5. Costs;

6. Prejudgment interest, if available; and

7. Any and all other relief just and proper in the premises.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP


By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net